## COUZENS *v.* SELLERS.

HABEAS CORPUS—REFUSAL TO COMPLY WITH INVALID ORDER—POLICE COURTS—DETROIT CHARTER.

The release from custody of a woman charged with disorderly conduct is invalid under the Charter of Detroit, p. 472, § 10, where it appeared that at the time of entering into a recognizance she was not brought before the magistrate; and a commitment of plaintiff for contempt of court for refusal to comply with such order will be set aside in *habeas corpus* proceedings.

Certiorari to Wayne; Codd, J. Submitted October 10, 1917. (Docket No. 71.) Decided December 27, 1917. Rehearing denied June 20, 1918.

*Habeas corpus* proceedings by James Couzens against Albert F. Sellers, police justice of the city of Detroit, and Edward Stein, sheriff of Wayne county, for his release from a commitment for contempt of court. From an order quashing the commitment, defendant Sellers brings certiorari. Affirmed.

*Louis J. Colombo* (*Fred A. Baker,* of counsel), for appellant.

*Allan H. Frazer* (*Otto Kirchner,* of counsel), for appellee.

PER CURIAM. In the city of Detroit, a woman named Jessie West was arrested by a policeman, taken to and locked in police quarters. It was during the forenoon of Saturday, May 19, 1917. Later on, on Monday, May 21, 1917, a complaint was made by the officer to one of the police justices of Detroit, in which complaint she was charged with being a disorderly person because she was a common prostitute "for the above-mentioned offense committed in his presence and view as such police officer." A warrant was issued, dated May 21, 1917, the woman was arraigned and convicted, and sentence was suspended. She is not asserting any right here nor complaining of any wrong.

Soon after she was taken to police headquarters, on Saturday, a member of the Wayne county bar appeared before Albert F. Sellers, one of the police justices of the city of Detroit, in behalf of Jessie West. He produced a man willing to enter into a recognizance for her immediate release. A written recognizance was prepared and executed by him, dated on that day, which recited that Jessie West was arrested and in custody at Central Police Station "on suspicion of being a disorderly person, to which charge the said Jessie West is ready to plead not guilty, and said Jessie West was ordered to recognize herself in the sum

of $100 with one surety in the like sum, for her appearance at the police court for arraignment on said charge." It recited that Jessie West as principal, and Noah A. Rounds as surety, personally came before the undersigned and severally and respectively acknowledged themselves indebted to the people of the State of Michigan in the sum of $100, etc. The condition was that if Jessie West appeared personally in the court on the 21st day of May, 1917, at 9 o'clock in the forenoon for arraignment on said charge, etc., the recognizance should be void. The instrument was subscribed before Albert F. Sellers, one of the police justices. No complaint had been, in fact, made against the woman in any court. She did not appear before the said police justice, or in his court, she did not sign the recognizance, and, except as it may be inferred that the attorney was acting in her interest, the record of the court does not show that she was demanding bail or interested in the matter. The recognizance having been thus executed, the said magistrate executed and delivered to the said attorney an instrument partly printed and partly in writing, which in its caption and otherwise recited and indicated that it was issued out of the police court, addressed to James Couzens, commissioner of police, Ernest Marquardt, superintendent of police, and to "any officer" of the metropolitan police department. The precise form of this instrument is somewhat in dispute, but in substance it commanded the persons so addressed to forthwith release from custody the said Jessie West "now being held at P. H. Station on a charge of dis. person," stating, also, that she was to appear in the police court on the 21st day of May, 1917, at 9 o'clock a. m. It was signed, "Albert F. Sellers, One of the Police Justices of the City of Detroit." It contained no recital that a recognizance had been taken in her behalf. The attorney presented this document at the police station,

and the clerk in charge, after conferring with his superior, refused to release the said Jessie West, returning the order for her release to the said attorney.

On the 23d of May, at a session of the police court, the said Roxborough presented an affidavit and petition, in which he set out various matters, among others the order hereinabove referred to, which in his petition does not, however, contain the words, "defendants not to be released if held on a warrant or some other charge," sets up that he presented it to John Hayes, lieutenant of the clean-up squad of the department, who in obedience to an order issued by James Couzens, police commissioner, refused to discharge from custody the persons named therein; that some time prior to May 19, 1917, the said James Couzens issued an order to the police officers, directing and ordering them to refuse to honor and obey orders of release signed by Albert F. Sellers, one of the police magistrates of the police court. The affidavit of the said Roxborough continues by saying that in issuing that order James Couzens knew that he was ordering and commanding said officers of the metropolitan police department to wilfully disobey lawful orders of Albert F. Sellers, a police magistrate of the police court of the city of Detroit, and that in issuing said order said James Couzens wilfully became guilty of contempt of the police court of the city of Detroit:

"In that the said action upon his part tends to defame and degrade and insult Albert F. Sellers, one of the police magistrates of said police court, and the said police court of the city of Detroit, and that action of the said James Couzens in issuing the said order brings the said Albert F. Sellers as a police magistrate and said police court, one of the most important departments in the judicial branch of the State government, charged with the enforcement of law, and the administration of justice, into disrepute, contumely and contempt, and tends to and does destroy the power

and influence of the said Albert F. Sellers as a police magistrate and the said police court as one of the most important departments of the judicial branch of the State government in the enforcement of the law and the administration of justice, and tends to and does excite and inflame the feelings and prejudices of the people against the said Albert F. Sellers as a police magistrate and the said police court, and tends to and does affect the said Albert F. Sellers as a police magistrate and the said police court so as to interfere with the due administration of law and justice by the said Albert F. Sellers as a police magistrate and the said police court."

Upon receiving this paper, the said Albert F. Sellers signed, and there was issued out of the police court, an order which, after stating in substance the contents of the said Roxborough affidavit, commands James Couzens, Ernest Marquardt, and John Hayes to appear before Albert F. Sellers, one of the police magistrates, on the 29th day of May, 1917, at 2 o'clock in the afternoon, at the police court, to show cause why each and all of them should not be punished for contempt of court in issuing said order and in obeying the same.

As the others were discharged, it is important only to consider the case of James Couzens, who showed cause in writing to the effect:

(1) That he had been served with no papers in the matter other than the order of the court and the affidavit of the said Roxborough.

(2) That he never made any order directing Marquardt and Hayes, or either of them, or any officer of the police department, wilfully or otherwise, to refuse to honor and obey the lawful orders of Honorable Albert F. Sellers, one of the police magistrates of the police court.

(3) That at the time of the making of the order for the release of Jessie West she had been arrested

and was held by the metropolitan police department at the detention home on the charge of being a common prostitute.

(4) That some time prior to the 19th of May, 1917, he had been advised by the attorney and counsel for the metropolitan police department that any order issued by the police court of the city of Detroit, or by any magistrate thereof, for the release of any person from custody for the violation of a certain ordinance of the city of Detroit (section 10 of the police act) when such person had not been brought before the said police court or the police magistrate or entered into recognizance as provided by section 10, is null and void, and in reliance upon the advice, which he then believed and still believes to be true, he instructed the said Hayes not to obey any such order.

(5) He denies that the said Roxborough presented said order for the release from custody of Jessie West to John Hayes, but upon information and belief that it was presented to Derrick S. Brown, a clerk of said police department, and that no knowledge or notice of the order came to him until some time after May 21, 1917, and on information and belief that the said Jessie West had not been brought before the police court or any police magistrate to answer the charge for which she was then held in custody or for any other purpose and that she did not enter into any recognizance, and had not otherwise been lawfully let to bail. He submits that the order for the release from custody of the said Jessie West was on its face void and of no legal force:

*First.* Because it does not appear that the said police magistrate or said police court ever had jurisdiction over the person of the said Jessie West.

*Second.* It does not appear that the police court or said police magistrate had jurisdiction, power, or authority to order the release of the said Jessie West.

*Third.* It does not appear that at the time of making the order the said Jessie West had appeared or been brought before the said police court or police magistrate of said police court to answer the charge on which she was held in custody, or for any other purpose.

*Fourth.* It does not appear that she had entered into recognizance or been lawfully let to bail.

*Fifth.* That it does not appear that any complaint or charge had been made in said police court against the said Jessie West.

Justice Sellers appointed counsel, friends of the court, who appeared in the matter. On June 1, 1917, there was a hearing in the police court of the city of Detroit before the Honorable Albert F. Sellers, police justice, at which testimony was taken, at the conclusion of which the said Albert F. Sellers issued a commitment, dated June 1, 1917, which recites that the court adjudged the defendant James Couzens guilty of a contempt and sentenced him to pay a fine of $100 or be committed to the county jail for a period of 30 days, and the fine had not been paid, and commanding the superintendent, captain, sergeant, or patrolman of the metropolitan police to forthwith take and deliver the said James Couzens into the custody of the sheriff of the county of Wayne, who was commanded to receive him in the Wayne county jail and there safely keep and employ him until the expiration of his sentence or until he should be thence discharged by due course of law.

Being in the custody of the sheriff, Mr. Couzens sued out a writ of *habeas corpus* (and a writ of certiorari to bring up the record in the contempt proceeding). There was a hearing before the Honorable George P. Codd, one of the circuit judges for Wayne county, who allowed the writ and who discharged him from custody, being of opinion, as appears from the record, that the order of the police court which he

was charged with having disobeyed was illegal and no contempt proceedings could be based thereon.

At the hearing in the police court in the contempt proceedings, one, and what was made perhaps the most important, phase of the matter, was the refusal of the police to honor the order of Justice Sellers, while honoring like orders made by other justices and by the recorder. It is evident from the record that Justice Sellers regarded the action of the police complained about as directed at himself. There was testimony tending to prove that a like practice had been followed for many years, and that similar orders from other magistrates were honored. At the hearing in the circuit court, like testimony was offered; but it seems finally to have been agreed that the question to be decided was whether the particular order was, or was not, valid. The said Albert F. Sellers petitioned this court for the allowance of a writ of certiorari to review and reverse the ruling of Judge Codd. The writ having been allowed, it was executed by bringing up a record, not certified by the trial judge or by the clerk of the circuit court, but by the attorneys for Justice Sellers and Mr. Couzens, respectively, as a true transcript of the proceedings.

For Mr. Couzens, it is contended that the order of release is a nullity, and for plaintiff in certiorari it is said that the only question to be determined is whether the order of release is null and void because Jessie West was not personally brought before Justice Sellers when he granted and issued the release.

The power of the police justice to admit to bail, the power to punish for contempt, the right of the police justice, as a plaintiff in certiorari, to review in this court an order of the circuit court made in *habeas corpus* proceedings, discharging one held upon a commitment for a criminal contempt, the sufficiency of the recitals in the order of commitment, none of these things is questioned in this court.

Upon the question which it is sought to have determined, we have been referred to *Clute* . v. *Ionia Circuit Judge,* 131 Mich. 203 (91 N. W. 159), in which it is broadly held that the justice of the peace had no authority to accept the recognizance except in a case actually pending before him. We are of opinion that the question before us should be decided upon the interpretation and application of the provisions of the charter of Detroit. The charter of Detroit provides that:

"The police court shall have concurrent jurisdiction with the recorder's court of the city of Detroit to hear, try and determine cases arising under the ordinances of the common council relative to common prostitutes, vagrants, mendicants, street beggars, drunken persons, disorderly persons, disturbances and breaches of the peace, indecent exposure of the person, indecent conduct, indecent exhibitions and other disorderly conduct. And any person arrested for a breach of any of the ordinances aforesaid shall be discharged from custody upon entering into recognizance in a sum not exceeding the penalty provided for the violation of the same, and with sureties satisfactory to the officer taking said recognizance conditioned for the appearance of such person to answer to any complaint that may be preferred against him or her. Either of said police justices, the clerk of the police court and the clerk of the recorder's court of the city of Detroit shall have power to take said recognizance, and it shall be the duty of the officer having such person in custody to produce him before any of said officers for the purpose of giving bail when required so to do. All recognizances taken as hereby provided shall be filed as soon as practicable in the office of the clerk of the court before whom such person is brought for trial, and said court shall have full jurisdiction and authority to control and enforce the same." Charter of Detroit 1914-16, p. 472, § 10.

The statute contemplates that, when a person is arrested for a breach of any of the ordinances mentioned

therein, a recognizance may be taken and the person discharged before arraignment. The charge—the ordinance claimed to have been violated—is in this connection the important thing. The maximum penalty of the recognizance is fixed, and persons other than judicial officers may accept it. All recognizances so taken are to be filed in the office of the clerk of the court *"before whom such person is brought for trial."* The law contemplates that for the purpose of giving the recognizance the officer having the accused person in custody shall produce such person before the person who takes the recognizance. The words "when required to do so" we interpret as meaning "when requested to do so" by one of those who may accept the recognizance, or by the accused. The law aims at speedy releases of persons arrested for breaches of ordinances and not immediately put upon their trial. The term "recognizance" as employed in the law is interpreted, as it commonly is, to mean the undertaking of the principal and surety or sureties. Applied with this interpretation, the law provides for speedy releases and for the orderly conducting of the proceedings to a release.

We agree with the learned circuit judge.